## Weaver Estate

*Hillegass & Moran,* for accountant.

*Daniel L. Quinlan, Jr.,* for Commonwealth.

*Wallace M. Keely,* for claimant.

TAXIS, P. J., July 5, 1957.—The account shows a balance in the hands of the guardian belonging to its ward amounting to $2,510.89, which is composed of participation mortgage investment fund "A" $1,200, U. S. Treasury 2¾s bonds $1,000.94, Fidelity Mutual

Life Insurance Company policy $1, Social Security award carried at $1, a total of $2,202.94, and cash.

Although the guardian of the incompetent was appointed by the common pleas court, that court, by a decree dated June 13, 1956, transferred jurisdiction in this matter to the orphans' court: Section 301 (4.1) of Orphans' Court Act of August 10, 1951, P. L. 1163. Thereafter by decree dated September 19, 1956, the orphans' court authorized the filing of this interim account to pass upon the two claims submitted: Section 601 of Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154.

Two claims were submitted: (1) By the Commonwealth of Pennsylvania in the amount of $142.96 for the care and treatment of the incompetent's husband Harlem L. Weaver; and (2) claim of Clarence R. Ritter, funeral director, for $714.50 for burial expenses of Harlem L. Weaver.

The facts have been stipulated and this stipulation discloses that Anna C. Weaver, incompetent, is 65 years of age and presently resides at the Norristown State Hospital where she has been confined since December, 1954. Medical testimony of Dr. Claude H. Butler on the hearing for the appointment of the guardian established that "there is little likelihood of her recovery."

Harlem L. Weaver, husband of Anna C. Weaver, died at the Norristown State Hospital on December 31, 1954.

Harlem L. Weaver left no estate and it is therefore impossible to pay these claims or any part of them from his estate.

At the time of his death Harlem L. Weaver and Anna C. Weaver owned a savings account in their joint names with a balance of $1,142.67, which money was wholly earned and accumulated by Harlem L. Weaver during his lifetime.

Harlem L. Weaver likewise left at his death three life insurance policies totaling $3,350.31, with Anna C. Weaver named as beneficiary. These policies were purchased and paid for solely from the funds of Harlem L. Weaver.

The savings account and the proceeds from the insurance policies have been received by and from a part of the guardianship estate of Anna C. Weaver as set forth in the first and partial account.

The cost of maintenance of Anna C. Weaver at the Norristown State Hospital is approximately $90 per month. Anna C. Weaver or her guardianship estate is entitled to the lifetime Social Security benefit of approximately $73 per month and also receives $25 per month for life from the proceeds of one of the insurance policies set forth above.

Section 644 of the Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154, provides inter alia: ". . . The court, for cause shown, may authorize or direct the payment or application of any or all of the income or principal of the estate of an incompetent for the care, maintenance or education of the incompetent, his spouse, . . . or for the reasonable funeral expenses of the incompetent's spouse . . .".

The liability imposed upon a competent wife for the support of an indigent husband by section 3 of the Act of June 1, 1915, P. L. 661, 71 PS §1783, and also by section 701 of The Mental Health Act of June 12, 1951, P. L. 533, 50 PS §1361, and The Support Law of June 24, 1937, P. L. 2045, as amended, 62 PS §1973, becomes a qualified and contingent liability to be imposed on the estate of an incompetent wife only "for cause shown."

What constitutes the "cause" required to allow the payment of claims such as these? Where such claims have been denied, such was done either because there was no statutory basis for imposing liability (Hollenback's Estate, 11 D. & C. 352; Sibilia's Estate, 82 Pa.

Superior Ct. 67), or no contractual basis (Pietrazko's Estate, 11 D. & C. 521; Heller's Estate, 22 D. & C. 649) or because to do so would have promptly exhausted the estate: Sedar's Estate, 29 D. & C. 680. Circumstances, however, in the instant case are different.

In the first place ample statutory authority exists for the imposition of liability on the estate and to do so to the extent requested will not exhaust the estate. Moreover we have in this case the additional circumstance which has in practically all cases where the courts have imposed liability for such claims been finally persuasive, namely, the death of decedent was the event which brought the estate of the ward into being: Roskop's Estate, 16 D. & C. 330; Shelley's Estate, 21 D. & C. 168; Van Ness Estate, 66 Pitts. L. J. 814; Davis' Estate, 77 Pitts. L. J. 494. In these cases the estate was created either by life insurance or compensation for wrongful death. In the instant case even the joint savings account became Anna C. Weaver's only by reason of the death of her husband.

In Dugan's Estate, 57 Montg. 325, the late president judge aptly stated, at page 327: "It will be noted that the impelling circumstance, tending to bring the courts to this conclusion, is the fact that the entire estate of the minor has been brought into existence by the event of the death of the deceased parent or deceased husband. The courts have also observed that common decency demands that a minor should be permitted to pay a reasonable sum for the disposition of the body of the minor's deceased husband or parent, when there is no other source from which to pay the funeral expenses.

"The case now under consideration falls squarely within the class of cases above indicated. It was supposed that the insurance policies were so drawn as to make the proceeds thereof available to pay the de-

ceased father's funeral expenses and expenses of his last illness. It turned out that this minor was the beneficiary of the policy. His entire estate consisted of the proceeds of these policies."

In light of the foregoing the two claims are allowed.

After payment of the claims as herein allowed, the net ascertained balance for distribution is awarded back to the accountant.

The account is confirmed, and it is ordered and decreed that Montgomery Norristown Bank and Trust Company, guardian, as aforesaid, forthwith pay the distributions herein awarded.

And now, July 5, 1957, this adjudication is confirmed nisi.